IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KIMBERLY BELCHER, *et al.*                                    PLAINTIFFS

v.                                    CIVIL ACTION NO. 2:15-CV-834-KS-TFM

THE GRAND RESERVE MGM, LLC, *et al.*                         DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [62] and **denies** Plaintiffs' Amended Motion for Partial Summary Judgment [56].

## I. BACKGROUND

This case involves claims under the Fair Housing Act ("FHA"),[1] the Alabama Fair Housing Law ("ALFHL"),[2] and Alabama common law. Defendants own and rent apartments at the Grand Reserve Pike Road apartment complex in Montgomery, Alabama. Plaintiffs are an African-American family that moved in to the Grand Reserve in August 2014. Plaintiff Dedric Belcher moved out in January 2016, and the remaining Plaintiffs moved out in the summer of 2016.

Plaintiffs claim that Defendants created and enforced rules that were designed to discriminate against African-American residents, residents with children, and residents with disabilities. Plaintiffs also claim that the rules had a disparate impact

---

[1] 42 U.S.C. § 3601, *et seq.*

[2] ALA. CODE §§ 24-8-1, *et seq.*

on African-American residents, residents with children, and residents with disabilities.

Specifically:

- From March 2015 to September 2015, Defendants enforced a rule (the "Adult Supervision Rule") which required that "[c]hildren 17 and under . . . be supervised by an adult older than 19 years of age . . . when out on the property; excluding traveling to and from the school bus area."[3]

- From March 2015 to September 2015, Defendants enforced a rule (the "Curfew Rule") which required that "[a]ll children under 18 years of age unless unaccompanied by an adult must be inside of their apartment no later than 8:30 pm CST."[4]

- From March 2015 to September 2015, Defendants enforced a rule (the "Playground Rule") which provided that "[t]he use of the playground is only for elementary children, grades K-6. It is not a spot to hangout or loiter."[5]

- From May 2012 to present, Defendants have enforced a rule (the "Pool Rule") which provided that "children under 19 years of age cannot be at the pool without the accompaniment of an adult," and that "everyone in the apartment home must wear a wristband at the pool."[6]

- Finally, from the spring or summer of 2015 to September 2015, Defendants enforced a rule (the "Gym Rule") which provided that the "Gym/Sauna is off limits to anyone below the age of 19. The Gym is not a place to hangout. Any resident in the facility below

---

[3]Exhibit 1 to Motion for Partial Summary Judgment at 35, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-1; Exhibit 5 to Motion for Partial Summary Judgment at 6-7, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-5.

[4]Exhibit 1 [50-1], at 35; Exhibit 5 [50-5], at 6-7.

[5]Exhibit 1 [50-1], at 35; Exhibit 5 [50-5], at 6-7.

[6]Exhibit 1 [50-1], at 35; Exhibit 5 [50-5], at 6-7.

the proper age will be subject to a minimum $200 fine."[7]

Plaintiffs also claim that Defendants retaliated against them with harassment, threats, and fines when they complained about these rules and/or attempted to enjoy the complex's facilities. Finally, Plaintiffs contend that Defendants steered African-American residents to apartments at the back of the apartment complex, while reserving apartments in the front for white residents.

Plaintiffs filed this lawsuit, claiming that Defendants violated the FHA's prohibitions of discrimination on the basis of race, familial status, and disability, and of retaliation for the enjoyment of rights secured by the FHA, as provided by 42 U.S.C. §§ 3604(a)-(c), 3617. Plaintiffs also claim that Defendants violated the ALFHL's similar prohibitions of discriminatory housing practices, provided by Ala. Code §§ 24-8-4(1)-(2), 24-4-8. Finally, Plaintiffs asserted common-law claims of negligence per se, breach of contract, and breach of the covenant of quiet enjoyment. Plaintiffs seek injunctive relief, compensatory damages, punitive damages, costs, and attorney's fees. The parties filed cross-motions for summary judgment, which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Alexandra H. v. Oxford Health Ins. Inc.*, 833 F.3d 1299, 1306 (11th Cir. 2016). "A genuine issue of

---

[7]Exhibit 1 [50-1], at 39; Exhibit 5 [50-5], at 7-8.

material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [fact-finder] to return a verdict in its favor." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). "In deciding whether a material disputed fact precludes summary judgment, a court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Id.* But "conclusory allegations without specific supporting facts have no probative value. One who resists summary judgment must meet the movant's [evidence] with opposing [evidence] setting forth specific facts to show why there is an issue for trial." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute . . . ." *Ga. State Conf. of the NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015). But "the mere filing of cross motions for summary judgment d[oes] not warrant the entry of summary judgment." *Id.*

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [62]

In their motion, Defendants seek summary judgment on numerous issues. The Court will address each in turn.

### A.  *Sham Affidavits*

Defendants argue that Plaintiffs filed "sham affidavits" that contradict testimony provided in their depositions, and that the Court should disregard the affidavits accordingly. Plaintiffs did not respond to this argument.

"The Eleventh Circuit, in limited circumstances, allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her

own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctr. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). However, every discrepancy does not create a sham affidavit. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986). For example, where the "apparent contradiction derives not from purposeful fabrication but instead from dialectical misunderstanding," the "contradiction becomes an issue of credibility or goes to the weight of the evidence." *Strickland v. Norfolk S. Ry.*, 692 F.3d 1151, 1162 (11th Cir. 2012). Likewise, a "failure of memory . . . create[s] an issue of credibility as to which part of the testimony should be given greatest weight if credited at all." *Tippens*, 805 F.2d at 954. "An affidavit may only be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

First, Defendants contend that the minor Plaintiffs' affidavits should be stricken because they testified at deposition that they do not know the meaning of certain words used in the affidavits, such as "harass" and "premises." This alleged contradiction is not sufficient to strike their affidavits as "sham affidavits," particularly in light of the fact that the affiants in question are minors. If the minor Defendants testify at trial, Defendants will be free to cross-examine them as they deem necessary.

Next, Defendants argue that minor Plaintiff A. S.'s affidavit testimony that she had a dream about Brittany Allen, Defendants' employee, should be stricken because

A. S. directly testified at deposition that she never had a dream about Allen. Defendants are correct that A. S. "flatly contradict[ed] his or her own prior deposition testimony" on this minor issue, but they have not demonstrated that A. S. did so "for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron*, 843 F.3d at 1306. Again, the Court notes that the affiant is a minor. The Court declines to strike the affidavit testimony, but if A. S. testifies at trial, Defendants will be free to cross-examine her as they deem necessary.

These are the only specific examples of "sham affidavit" testimony Defendants outlined in briefing, despite claiming that "Plaintiffs' affidavits are rife with statements that were later contradicted or controverted in their deposition testimony." *See* Brief in Support of Motion for Summary Judgment at 33, *Taylor v. Hughes*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Oct. 28, 2016), ECF No. 63. The Court declines to sift through Plaintiffs' affidavits and deposition transcripts and make Defendants' arguments for them. Defendants' Motion for Summary Judgment is denied as to this issue.

**B.    *Injunctive Relief***

Defendants argue that Plaintiffs lack standing to seek injunctive relief because they are no longer residents at the Grand Reserve apartments. Plaintiffs did not respond to this argument.

The Court already addressed this issue as it relates to Mr. Belcher. In his Report and Recommendation of February 24, 2016, the Magistrate Judge noted that Mr. Belcher had moved out of the Grand Reserve. *Belcher v. Grand Reserve MGM, LLC,*

No. 2:15-CV-834, 2016 U.S. Dist. LEXIS 31848, at *7-*8 (M.D. Ala. Feb. 24, 2016). Accordingly, the Magistrate Judge concluded that Mr. Belcher lacked standing to seek prospective injunctive relief. *Id.* at *8. The Court adopted the Report and Recommendation on March 10, 2016. *See* Order, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Mar. 10, 2016), ECF No. 47. The same reasoning applies here.

A plaintiff's standing to seek injunctive relief "depends on whether he is likely to suffer future injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013). "That requires a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." *Id.* "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). It is undisputed that all Plaintiffs moved out of the Grand Reserve. Therefore, Defendants' alleged FHA violations pose no real and immediate threat of future injury to them. Accordingly, Plaintiffs do not have standing to seek prospective injunctive relief. *See Forziano v. Indep. Group Home Living Program*, 613 F. App'x 15, 17 (2nd Cir. 2015) (disabled couple's request for injunctive relief under FHA was dismissed for lack of standing where they had already moved into a different facility).[8]

---

[8]The Court notes that Plaintiffs have not presented an argument based on "neighborhood standing," or alleged any loss of interracial associations that would support such an argument. *See, e.g. Jackson v. Okaloosa County*, 21 F.3d 1531, 1539 (11th Cir. 1994) (quoting *Trafficante v. Metro. Life Insurance Co.*, 409 U.S. 205, 210,

## C.    Steering

Defendants argue that Plaintiffs have not alleged or provided any evidence of facts to support a claim of steering under 42 U.S.C. § 3604(a). Plaintiffs did not directly address the steering claim in any of their briefs.

The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). "Section 3604(a) prohibits blatant refusals to rent or sell, as well as actions that have the effect of limiting the availability of housing to members of protected classes." *Hall v. Lowder Realty Co.*, 160 F. Supp. 2d 1299, 1319 (M.D. Ala. 2001) (punctuation omitted) (citing *Secretary, United States Dep't of Housing and Urban Dev. v. Blackwell*, 908 F.2d 864 (11th Cir. 1990); *Jackson*, 21 F.3d at 1542.

Plaintiffs' steering claim arises from their allegation that Defendants "have been steering and continue to steer black and other minority applicants and residents to apartments at the back or rear of the Grand Reserve while steering white applicants and residents to apartments at the front of the Grand Reserve." First Amended Complaint at 8, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Jan. 4, 2016), ECF No. 24. But Plaintiffs did not direct the Court to any evidence of such steering practices. In fact, Plaintiffs did not even address this issue in briefing.

---

93 S. Ct. 364, 367, 34 L. Ed. 415 (1972)).

The Court declines to search through the record and make Plaintiffs' arguments for them. Defendants' Motion for Summary Judgment is granted as to this issue.

## D.     *Discrimination, Race – FHA*

Plaintiffs claim that Defendants discriminated against them because of their race in violation of the FHA by creating rules that had a disparate effect on the African-American residents of the Grand Reserve and by enforcing the rules in a discriminatory manner. Defendants contend that Plaintiffs presented no evidence of intentional discrimination on the basis of race.

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To evaluate a claim of discrimination under the FHA, the Court applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 625 (11th Cir. 2015).

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons asserted by the defendant are mere pretext.

*Blackwell*, 908 F.2d at 870. "The ultimate question in cases like this one – whether a plaintiff has been unlawfully discriminated against – can be resolved only in the light of the specific facts of each case." *Woodard v. Fanboy, LLC*, 298 F.3d 1261, 1267 (11th

Cir. 2002).

"To prove intentional discrimination, a plaintiff has the burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA." *Bonasera v. City of Norcross*, 342 F. App'x 581, 584 (11th Cir. 2009). "[A] plaintiff may meet this burden by presenting evidence that the decision-making body acted for the sole purpose of effectuating the desires of private citizens, that racial considerations were a motivating factor behind those desires, and that members of the decision-making body were aware of the motivations of the private citizens." *Id.*

Plaintiffs presented ample evidence that Defendants' actions were motivated, at least in part, by a discriminatory purpose. First, Kimberly Belcher provided an affidavit in which she testified that Defendants' apartment manager, Brittany Allen, told her that children waiting for the bus were "blocking traffic . . . and being loud and using profanity . . . ." Exhibit 1 [50-1], at 6. Allen allegedly told Belcher that "she will not allow that type of behavior [and] we are not the ghetto . . . ." *Id.* According to Belcher, Defendants' assistant manager, Khelsi Harvest told her that "she felt that the manager was being biased because it was only the white residents that called to complain on the black children within the complex," and that "an incident had occurred where a white family called them because too many black children where [sic] at the pool." *Id.* Finally, Belcher stated in her affidavit:

> I have seen white children and adults several times sun bathing, using the pool areas, and the grounds and facilities at the Grand Reserve without adult supervision and without being harassed, threatened or

fined while my husband and I, our children, other black children and black families are harassed, threatened, and fined. I have seen white children use the gym, washing clothes, walking dogs at the Grand Reserve without being harassed threatened or fined while my husband and I, our children, other black children and black families are harassed threatened and fined.

*Id.* at 7.

During her deposition, Kimberly Belcher testified that she heard Brittany Allen "say things like there's too many black kids walking around on the property." Exhibit 15 to Amended Motion for Partial Summary Judgment at 133-34, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Sept. 16, 2016), ECF No. 57. Additionally, she testified that Allen "questioned the black children more than the white children on the property." *Id.* at 134. While Belcher saw maintenance workers question black children at the pool, she "never saw maintenance harass the white tenants at the pool." *Id.* at 135. Finally, Allen allegedly told Belcher, "you pay too much money for this place to be a ghetto, and your children need to conduct themselves as such." *Id.* at 140.

Khelsi Harvest, an employee at the Grand Reserve during the relevant time period, provided an affidavit that includes the following relevant testimony:

. . . Brittany Allen was the property manager during the time I worked at the Grand Reserve. I was told by Brittany Allen . . . that the reason for the rules restricting the activities of children was that she was receiving complaints from white residents that the . . . value of the property was going down because of the type of tenants wandering the property. Black children very often wandered around the complex in groups. Few white children wandered in groups.

Brittany Allen is wrong when she states that there were many complaints about the activities of children on the property being the

11

reason for the new rules restricting and prohibiting some of the activities of children. There were not many complaints about the inappropriate activities of children on the grounds of the complex. I can only recall about two minor incidents involving children the whole time I worked there.

Brittany Allen told me that two tenants called her and asked if the property was turning into Section 8 Housing because of the increased number of blacks on the property. White people complained that there were too many blacks moving into and living at the Grand Reserve thereby reducing the value of the property. Brittany Allen told me that she got two calls from white residents complaining and asking her whether Grand Reserve did background checks on applicants and what kind of procedures were used on applicants.

* * *

. . . Brittany told me that Savannah Cox in upper management had told Brittany that a well-maintained El Camino car owned by a black male resident looked "thuggish." Brittany told the man that he had to put the well-maintained El Camino automobile in a storage unit on the property (at a reduced rate) because its presence devalued the property. A white resident complained about how the children of cleaning staff member Shakenya Perry looked and dressed out on the property.

* * *

Brittany Allen told me that she received complaints about kids hanging out at the pool. Older black kids hung out at the pool without supervision prior to the new rule being imposed. Brittany Allen changed the pool rule to require that any children age 18 and under must have adult supervision.

With regard to the curfew rule prohibiting children outside after 8 p.m., I was told by Brittany Allen that the owner frequently rode through the property at night and would see kids outside and heard residents complaining about the black kids hanging-out outside at night. It was the black kids that hung out together at night not the white kids. The curfew rule was imposed to stop the black kids from hanging out at night on the property. . . .

With regard to the gym and sauna rules prohibiting use by children under age 18, Grand Reserve gym rules prior to the new rules

imposed by Brittany Allen allowed children age 16 and older to use the gym without supervision. A lot of young black high school athletes – mostly males – started to and continued to use the gym. I saw them frequently in the gym without supervision and their numbers increased as the number of black residents increased. I neither received nor heard of any complaints about the older black athletes misusing the gym. After seeing the number of black athletes starting to use the gym, Brittany Allen changed the rules to prohibit anyone under age 18 from using the gym. Grand Reserve sauna policies and rules prior to the new rules implemented by Brittany Allen allowed older kids to use the sauna. I never heard any complaints about the misuse of the sauna by children.

Exhibit 18 to Amended Motion for Partial Summary Judgment at 6-9, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Jan. 10, 2017), ECF No. 79.

Harvest provided the following opinion regarding the disputed rules:

I believe that the new rules at the Grand Reserve prohibiting and restricting the activities of children were targeted at children and especially targeted black children. I believe that the new rules were imposed and targeted at black children being out on the property in the daytime ant [sic] at night and using the amenities and facilities on the property. I believe that these new rules were targeted at and discriminated against black children and black tenants. I believe that the new rules were implemented in a way that treated black kids differently than white kids were treated.

*Id.* at 10-11.

All of this evidence is sufficient to meet Plaintiffs' initial "burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA." *Bonasera*, 342 F. App'x at 584. Therefore, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for its actions. *Blackwell*, 908 F.2d at 870. Defendants' burden is one of production, rather than persuasion. *Tex. Dep't of Cmty. Affiars v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). For the purpose

of addressing Defendants' motion, the Court will assume that Defendants have met this burden. Therefore, the burden shifts back to Plaintiffs "to prove by a preponderance of the evidence that the legitimate reasons asserted by the defendant are mere pretext." *Blackwell*, 908 F.2d at 870.

"A showing that a defendant has lied about the reasons for his acts – that he had a 'dishonest belief' in the reasons – can be strong evidence that a defendant has acted with discriminatory intent." *Woodard*, 298 F.3d at 1265.

> A plaintiff trying to show pretext based on a defendant's dishonest belief of the grounds the defendant gave for his decision does not succeed by presenting evidence that the defendant was mistaken about the facts upon which he based his alleged non-discriminatory decision. Instead, a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision.

*Id.* "One way to prove dishonest belief" is "to present evidence that no reasonable person, in the exercise of impartial judgment, could have believed" the alleged non-discriminatory reason for the disputed action. *Id.* at 1266.

As noted above, Khelsi Harvest testified via affidavit that there "were not many complaints about the inappropriate activities of children on the grounds of the complex." Exhibit 18 [79], at 6. In fact, she said that Brittany Allen told her that white tenants were complaining about the African-American tenants, *id.*, and that the rules were promulgated by management to "project the kind of image [they] wanted to project." *Id.* at 7. Harvest also testified that she never "received nor heard of any complaints about the older kids interfering with younger kids on the playground before the new rules were imposed," *id.*, and that Allen changed the pool rule after receiving

14

complaints about African-American kids at the pool. *Id.* at 8. Harvest also testified that Allen told her that the owner was responding to "residents complaining about the black kids hanging-out outside at night." *Id.* Finally, with respect to the gym rule, Harvest testified that she never "received nor heard of any complaints about the older black athletes misusing the gym," or "complaints about the misuse of the sauna by children." *Id.* at 8-9. She testified that Allen changed the rules "[a]fter seeing the number of black athletes starting to use the gym . . . ." *Id.* at 8.

Harvest's testimony is sufficient to create a genuine dispute of material fact as to whether Defendants' alleged reasons for the disputed rules were pretext for discrimination. The Court denies Defendants' Motion for Summary Judgment as to Plaintiffs' claim of racial discrimination under the FHA.

## E.    *Discrimination, Race – ALFHL*

The ALFHL makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with it, because of race, color, religion, sex, familial status, or national origin." ALA. CODE § 24-8-4(1). For the reasons provided in the Court's discussion of Plaintiffs' FHA claims, the Court likewise denies Defendants' Motion for Summary Judgment as to Plaintiffs' claim of racial discrimination under the ALFHL.[9]

_____

[9]After substantial research, the Court was unable to find any case in which the Eleventh Circuit, Alabama's federal courts, or Alabama's state courts addressed a claim of discrimination under the ALFHL. But the Eleventh Circuit has held that the "same legal analysis" applies to claims under the FHA and the Florida Fair Housing Act because the two laws are "substantively identical." *See Phillipeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 643 (11th Cir. 2015). The relevant portions

## F. Discrimination, Disability – FHA

Defendants offer two arguments as to Plaintiffs' claims of discrimination on the basis of disability. First, Defendants note that Plaintiffs alleged disability discrimination under 42 U.S.C. § 3604(b), but § 3604(b) does not prohibit discrimination because of disability. *See* 42 U.S.C. § 3604(b). Rather, 42 U.S.C. § 3604(f) prohibits discrimination on the basis of disability, and Plaintiffs did not plead a claim under that subsection of the FHA. *See* 42 U.S.C. § 3604(f)(2). Plaintiffs did not respond to this argument in briefing.

Moreover, Defendants argue that Plaintiffs have no evidence of discrimination on the basis of disability. To prove a claim of disability discrimination under the FHA, a plaintiff must provide evidence that "defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA." *Bonasera*, 342 F. App'x at 584. In the disability context, the FHA also bars discrimination by "refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prove a "failure-to-accommodate" claim, a plaintiff must demonstrate that "(1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the

---

of the FHA and ALFHL appear to be substantively identical, and the parties appear to agree that cases addressing the FHA can be applied to claims under the ALFHL. Therefore, the Court will apply the same legal analysis to Plaintiffs' claims under each law.

accommodation." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014).

In their briefs, Plaintiffs did not cite any evidence that Defendants discriminated against them because of a disability. In fact, Plaintiffs did not even address their disability-based claims. They did not direct the Court to evidence satisfying the elements listed above, and the Court declines to search the record for evidence to prove their case. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disability discrimination under the FHA.

## G. *Discrimination, Disability – ALFHL*

For the same reasons provided in the Court's discussion of Plaintiffs' disability discrimination claims under the FHA, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disability discrimination under the ALFHL.

## H. *Discrimination, Familial Status – FHA*

Plaintiffs' familial status discrimination claims arise from the promulgation and enforcement of five rules, as discussed above. Defendants contend that these rules were not established for the purpose of discriminating against families, but, rather, "to promote a more family-friendly environment, to address an increasing number of resident complaints, to further the objectives of safety, and to deter objectively offensive conduct, excessive noise, and unreasonable disturbances." Brief in Support of Motion for Summary Judgment [63], at 45.

The FHA makes it unlawful to "discriminate against any person in the terms,

17

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." 42 U.S.C. § 3604(b). "'Familial status' means one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual or individuals . . . ." 42 U.S.C. § 3602(k). Therefore, the FHA "prohibits discrimination against families with children." *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Comm. Homeowners Ass'n, Inc.*, 682 F. App'x 768, 770 (11th Cir. 2017) (citing 42 U.S.C. §§ 3604, 3602(k)). "To prove familial-status discrimination, [Plaintiffs] must show that Defendants discriminated against [them] in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of familial status." *Woodard*, 298 F.3d at 1264.

One way a plaintiff can establish a *prima facie* violation of § 3604(b) is by "establishing the existence of facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households." *Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012). "Facially discriminatory actions are just a type of intentional discrimination or disparate treatment." *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Park Partners Residential, LLC*, No. 16-80740, 2017 U.S. Dist. LEXIS 35546, at *9 (S.D. Fla. Mar. 10, 2017). "When a facial challenge is made, the motive of the drafters of the ordinance is irrelevant." *Id.* at *10. To determine whether a rule is facially discriminatory, the Court first must determine whether "an ordinance singles out protected individuals with regard to housing and applies different rules to them." *Id.*

at *9 (citing *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007)); *see also Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 231 (6th Cir. 2003) (policy prohibiting those with children from renting/owning second and third floor condos was facially discriminatory on the basis of familial status). Second, "the Court must determine whether the differential treatment is justified such that it is not a violation of the FHA." *Park Partners*, 2017 U.S. Dist. LEXIS 35546 at *10 (citing *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1350 (S.D. Fla. 2007)).

If the disputed rule is not facially discriminatory, a plaintiff must demonstrate that "defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA," *Bonasera*, 342 F. App'x at 584, and the Court applies the *McDonnell Douglas* burden-shifting framework outlined above. *Molina*, 635 F. App'x at 625.

### 1. The "Adult Supervision" Rule

First, the "Adult Supervision Rule" required that "[c]hildren 17 and under . . . be supervised by an adult older than 19 years of age . . . when out on the property; excluding traveling to and from the school bus area."[10] On its face, this rule limits the ability of minors seventeen years of age or younger from enjoying the facilities in connection with the rental of a dwelling, as prohibited by 42 U.S.C. § 3604(b). Therefore, it is facially discriminatory, and Defendants must justify their disparate treatment on the basis of familial status. *See Bischoff v. Brittain*, 183 F. Supp. 3d 1080,

---

[10]Exhibit 1 [50-1], at 35.

1089 (E.D. Cal. 2016) (apartment complex policy requiring "young children" to be supervised by adults was facially discriminatory on the basis of familial status); *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1243 (E.D. Cal. 2009) (rule requiring all children 10 and younger to be supervised by an adult while outside was facially discriminatory on the basis of familial status); *Iniestra*, 886 F. Supp. 2d at 1166 (rule requiring children to be supervised by adult at all times was facially discriminatory on the basis of familial status).

Defendants generally contend that all of the disputed rules were promulgated "with the intent to promote a safe, family-friendly environment for its residents." Brief in Support of Motion for Summary Judgment [63], at 46. "The Eleventh Circuit has not addressed the standard a governmental defendant must meet to justify disparate treatment under the FHA." *Jeffrey O.*, 511 F. Supp. 2d at 1350. The Sixth, Ninth, and Tenth Circuits require a defendant to "show either: (1) that the restriction benefits the protected class, or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House*, 468 F.3d at 1125 (citing *Larkin v. Michigan Dep't of Social Servs.*, 89 F.3d 285, 290 (6th Cir. 1996); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir. 1995)).

Defendants presented an affidavit from Brittany Allen, a leasing consultant for the Grand Reserve. Affidavit of Brittany Allen at 1, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Oct. 28, 2016), ECF No. 64-1. She provided the following testimony:

I served as the Property Manager at Grand Reserve from approximately

August 11, 2014, to September 14, 2015. In or around March 2015, I began to receive an increasing number of complaints from residents about excessive noise, profanity, use of offensive language (including the n-word), condoms on the playground, underwear in the gym, marijuana use on the playground, vandalism, littering, and the like. I also witnessed some of these problems myself. I have a young child and maintaining a family-friendly atmosphere at Grand Reserve was important to me.

*Id.* at 1-2.

With respect to Plaintiffs, she testified: "I witnessed the Belchers' oldest child engaged in an inappropriate simulated sexual act with a boy after getting off the school bus one day. Specifically, I witnessed her gyrating explicitly with the boy, in a bent-over position." *Id.* at 2. She continued:

I lived in the same building as the Belchers and, on more than one occasion, I heard loud arguments from their apartment. During one particularly loud argument, the police were called to the Belchers' apartment. I also regularly heard their children use loud profanity, including the n-word, and create a significant disturbance for other residents. I received multiple complaints about noise coming from the Belchers' apartment and from their children while out on the Grand Reserve property.

*Id.* at 2. Defendants attached a copy of a written complaint about the excessive noise from Plaintiffs' apartment that Allen received from another resident. *Id.* at 9. The resident complained that Kimberly Belcher was "always screaming at children, stomping, cussing, fussing, walking loud," and "play[ing] music so loud" at "2:00 am, 4:00 am, [and] all day on weekends." *Id.*

Regarding her reasons for the new rules, Brittany Allen testified:

In an effort to promote a more family-friendly environment at Grand Reserve, I drafted a notice to the residents addressing the concerns raised. In posting this notice, it was not my intent to discriminate against families or children. To the contrary, my intent in posting the rule was to

promote a more family-friendly environment at the Grand Reserve where residents of all ages could enjoy the amenities without fear of encountering obscene language, sexually explicit activities, illegal drug use, vandalism, etc. My intent was also to address an increasing number of resident complaints, to further the objectives of safety, and to deter objectively offensive conduct, excessive noise, and unreasonable disturbances.

*Id.* at 3. But according to Allen, "[t]here is currently no rule in place in Grand Reserve generally requiring adult supervision for any child 17 years of age or younger anywhere on the property, nor are there signs posted anywhere at Grand Reserve indicating otherwise." *Id.* at 4.

Of course, as noted above, Plaintiffs presented an affidavit from Khelsi Harvest, in which she testified that there "were not many complaints about the inappropriate activities of children on the grounds of the complex." Exhibit 18 [79], at 6. In fact, she said that Brittany Allen told her that white tenants were complaining about the African-American tenants, *id.*, and that the rules were promulgated by management to "project the kind of image [they] wanted to project." *Id.* at 7. Harvest stated:

I believe that the new rules at the Grand Reserve prohibiting and restricting the activities of children were targeted at children and especially targeted black children. I believe that the new rules were imposed and targeted at black children being out on the property in the daytime ant [sic] at night and using the amenities and facilities on the property. I believe that these new rules were targeted at and discriminated against black children and black tenants. I believe that the new rules were implemented in a way that treated black kids differently than white kids were treated.

*Id.* at 10-11.

Therefore, the Court finds that there exists a genuine dispute of material fact as to whether the "Adult Supervision Rule" is justified, based on the analysis cited

above. Defendants must demonstrate at trial "either: (1) that the restriction benefits the protected class, or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House, Inc.*, 468 F.3d at 1125.

### 2. The "Curfew Rule"

Next, the "Curfew Rule" required that "[a]ll children under 18 years of age unless unaccompanied by an adult must be inside of their apartment no later than 8:30 pm CST."[11] This rule places a limitation on the ability of minors eighteen or younger to enjoy the facilities in connection with the rental of a dwelling that it does not place on adults. Therefore, it is facially discriminatory, and Defendants must justify the disparate treatment on the basis of familial status. *Fair Hous. Ctr.*, 136 F. Supp. 3d at 1372 (curfew rule that required all persons under 18 to be in home or back patio after sunset was facially discriminatory); *Iniestra*, 886 F. Supp. 2d at 1168-69 (rule requiring children to be in apartments when building lights came on limited children's use of facilities and was facially discriminatory); *Pack*, 689 F. Supp. 2d at 1246 (curfew rule requiring all children under 18 to be in by 10:00 p.m. was facially discriminatory).

Based on the conflicting testimony of Brittany Allen and Khelsi Harvest, as discussed at length above, the Court finds that there exists a genuine dispute of material fact as to whether Defendants have demonstrated that the "Curfew Rule" is justified, utilizing the analysis cited above. *See Cmty. House, Inc.*, 468 F.3d at 1125.

---

[11]Exhibit 1 [50-1], at 35.

### 3. The "Playground Rule"

The "Playground Rule" provided that "[t]he use of the playground is only for elementary children, grades K-6. It is not a spot to hangout or loiter."[12] The second section of this policy – forbidding loitering on the playground – is not facially discriminatory insofar as it applies to all persons, regardless of familial status. However, the first section – only permitting children grades K-6 to use the playground – is facially discriminatory because it limits the ability of adults and minors who are not in grades K-6 to enjoy the facilities in connection with the rental of a dwelling, as prohibited by 42 U.S.C. § 3604(b). *Cf. Iniestra*, 886 F. Supp. 2d at 1166 (rule forbidding children under age of 18 from using pool unless accompanied by adult was facially discriminatory on basis of familial status); *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1060-62 (E.D. Cal. 1998) (rule that disallowed children access to certain pools and prohibited children from playing in "adult areas," prohibited them from enjoying the privileges of renting that adults enjoyed, and were therefore *prima facie* discriminatory on the basis of familial status).

Based on the conflicting testimony of Brittany Allen and Khelsi Harvest, as discussed at length above, the Court finds that there exists a genuine dispute of material fact as to whether Defendants have demonstrated that the "Playground Rule" is justified, utilizing the analysis cited above. *See Cmty. House, Inc.*, 468 F.3d at 1125.

### 4. The "Pool Rule"

---

[12]Exhibit 1 [50-1], at 35.

24

The "Pool Rule" provided that "children under 19 years of age cannot be at the pool without the accompaniment of an adult," and that "everyone in the apartment home must wear a wristband at the pool."[13] The second part of the rule – requiring all residents to wear an identifying wristband at the pool – is not facially discriminatory because it applies equally to all residents, regardless of familial status. However, the first part of the rule, requiring all children under nineteen to be accompanied by an adult, limits the ability of minors eighteen or younger from enjoying the facilities in connection with the rental of a dwelling, as prohibited by 42 U.S.C. § 3604(b). Therefore, it is facially discriminatory, and Defendants must justify the disparate treatment on the basis of familial status. *See Iniestra*, 886 F. Supp. 2d at 1166 (rule forbidding children under age of 18 from using pool unless accompanied by adult was facially discriminatory on basis of familial status); *Llanos*, 24 F. Supp. 2d at 1060-62 (rule that disallowed children access to certain pools and prohibited children from playing in "adult areas," prohibited them from enjoying the privileges of renting that adults enjoyed, and were therefore *prima facie* discriminatory on the basis of familial status).[14]

---

[13]Exhibit 1 [50-1], at 35.

[14]*But see Fair Hous. Ctr. Ind. v. MH Leasing, LLC*, No. 1:15-CV-817-TWP-MJD, 2017 U.S. Dist. LEXIS 117884, *23 (S.D. Ind. May 11, 2017) (rule prohibiting those 18 and under from using the pool without adult supervision was not discriminatory, but "typical safety rules common in communities throughout the district."); *Barkhordar v. Century Park Place Condo. Ass'n*, 2016 U.S. Dist. LEXIS 145076, at *23-*24 (C.D. Cal. Oct. 18, 2016) (rules prohibiting children from using pool without adult supervision were not discriminatory, but addressing special concerns for reasons of safety).

Based on the conflicting testimony of Brittany Allen and Khelsi Harvest, as discussed at length above, the Court finds that there exists a genuine dispute of material fact as to whether Defendants have demonstrated that the "Pool Rule" is justified, utilizing the analysis cited above. *See Cmty. House, Inc.*, 468 F.3d at 1125.

5.    *The "Gym Rule"*

Finally, the "Gym Rule" provided that the "Gym/Sauna is off limits to anyone below the age of 19. The Gym is not a place to hangout. Any resident in the facility below the proper age will be subject to a minimum $200 fine."[15] Because this rule limits the ability of minors nineteen or younger from enjoying the facilities in connection with the rental of a dwelling, as prohibited by 42 U.S.C. § 3604(b), it is facially discriminatory. *See United States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1091-92 (C.D. Cal. 2003) (rules forbidding all children under 16 from using therapeutic pool, and all children under 14 from using sauna were facially discriminatory); *cf. Iniestra*, 886 F. Supp. 2d at 1166 (rule forbidding children under age of 18 from using pool unless accompanied by adult was facially discriminatory on basis of familial status); *Llanos*, 24 F. Supp. 2d at 1060-62(rule that disallowed children access to certain pools and prohibited children from playing in "adult areas," prohibited them from enjoying the privileges of renting that adults enjoyed, and were therefore *prima facie* discriminatory on the basis of familial status).[16]

---

[15]Exhibit 1 [50-1], at 39.

[16]*But see Landesman v. Keys Condo. Owners Ass'n*, No. C 04-2685 PJH, 2004 U.S. Dist. LEXIS 21746 (N.D. Cal. Oct. 19, 2004) (preliminary injunction denied as

Therefore, Defendants must justify their disparate treatment on the basis of familial status. *See Cmty. House, Inc.*, 468 F.3d at 1125. Based on the conflicting testimony of Brittany Allen and Khelsi Harvest, as discussed at length above, the Court finds that there exists a genuine dispute of material fact as to whether Defendants have demonstrated that the "Gym Rule" is justified.

6.    *Summary*

For these reasons, the Court finds that all five disputed rules are facially discriminatory on the basis of familial status. Accordingly, Defendants must "show either: (1) that the restriction benefits the protected class, or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House, Inc.*, 468 F.3d at 1125. Because there are genuine disputes of material fact as to these issues, summary judgment would be inappropriate. The Court denies Defendants' Motion for Summary Judgment [62] with respect to Plaintiffs' claims of familial status discrimination under the FHA.

## I.    *Section 3604(b), Causation of Damages*

Defendants also argue that Plaintiffs have no evidence of any injury because they "were never assessed or paid a fine for violation of the subject rules," and because while they "claim to have been harassed about the supervision/curfew rules, the evidence shows that the plaintiffs were cautioned about continuously violating the rule

---

to rule prohibiting children under 15 from using gym unless under adult supervision, and prohibiting children under 16 from using gym equipment at any time).

prohibiting excessive noise." Brief in Support of Motion for Summary Judgment [63], at 51.

The FHA "authorizes courts to compensate a plaintiff for the injury caused by the defendant's" violation of the law. *Curtis v. Loether*, 415 U.S. 189, 195, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974). Indeed, one asserting a claim for damages under § 3604(b) must demonstrate that the defendant's actions proximately caused his or her damages. *Fair Hous. Ctr.*, 682 F. App'x at 787.

Plaintiffs provided evidence of damages caused by the promulgation and enforcement of the disputed rules. Plaintiff Kimberly Belcher provided an affidavit in which she stated her "family has been unable to fully enjoy the amenities at the Grand Reserve because of the rules implement by the Grand Reserve." Exhibit 1 [50-1], at 3. She testified: "Staff at the Grand Reserve have harassed me and my family . . . on multiple occasions in their enforcement of these rules. In the last six months, the resident managers and security personnel . . . at the Grand Reserve have harassed and threaten [sic] me, my husband, [and] my family . . . repeatedly and on numerous occasions regarding enforcement of the rules." *Id.* at 4. She specifically testified that she and her husband have "been fined on two occasions for a total of $400 for violations of the rules and harassed and threatened repeatedly with the assessment of additional fines and threats of eviction if fines are not paid." *Id.*[17] She said this has caused "a lot

---

[17]Defendants contend that these fines were imposed for violations of the rule regarding excessive noise, and that Plaintiffs were never actually required to pay them. However, the Court is not permitted to weigh the evidence or make credibility determinations. *Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016). It

of stress in my household over finances and what our children were allowed to do when at home. . . . There was no way to get out of our lease without losing our $400 security deposit and paying more money for moving expenses, rent and deposits somewhere else." Exhibit 1 [50-1], at 6. She continued: "It has been very stressful financially because unless we pay the fines our monthly rent payments will not be accepted putting us at risk of getting evicted. The fines have also caused us financial problems because our budget is subject to being thrown off without notice. . . . A $200-$400 fine is equivalent to a car payment and make [sic] us unable to pay bills I would otherwise pay." *Id.* at 7. She said they felt "like prisoners in [their] own home . . . ." *Id.* at 8.

In a second affidavit, Kimberly Belcher again stated that she and her family had been "harassed and threatened with fines and eviction" for violating the disputed rules. Exhibit 6 to Motion for Partial Summary Judgment at 3, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-6. She said that "the reaction of [her] family to the rules was a feeling of shock, surprise, frustration, impotence and feeling trapped." *Id.* But they "had to stay in the apartment even though the children were trapped inside," because "the lease required a 30 day notice, an additional month's rent and forfeiture of our security deposit." *Id.* She said "[a]ll three children were constantly angry, frustrated and flustered that they had to come inside after school, be inside on weekends and could not be with their friends outside." *Id.* at 4. Being constantly trapped in the apartment with the children, she

---

"must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ.*, 830 F.3d at 1252.

"kept a headache all the time and was constantly stressed and on edge . . . ." *Id.*

According to Kimberly Belcher, her son, L. C., "was particularly and constantly angry at having to be kept inside all the time." *Id.* He "cried all the time because he could not go outside. He would cry almost every day and run hitting the walls and throwing toys around the house. He argued with me constantly and snuck out of the house once or twice a week to be outside . . . ." *Id.* Belcher "bought a GPS tracker watch for [him] so that [she] could locate him when he was outside." *Id.* at 5. A. S., the oldest minor Plaintiff, would "constantly get angry and upset because she could not go outside on the playground and be with her siblings or other children because she was too old." *Id.* The entire family "felt embarrassed and frightened by the enforcement of the rules . . . ." *Id.* On two occasions, a sheriff's deputy working as Grand Reserve security came to their apartment and warned that they would be fined because of the children's actions. *Id.* at 5. Belcher said it was embarrassing because her husband, Dedric Belcher, is a police officer. *Id.* at 6.

"The harassment and threats" allegedly "affected [their] marriage." *Id.* "The complaints caused great additional marital stress and strain between" Plaintiffs Kimberly and Dedric Belcher. *Id.* According to Kimberly, "Dedric got very angry repeatedly and blamed me and the children for the complaints. Dedric feared that the complaints to the Sheriff Department by the Grand Reserve and the complaints by neighbors and maintenance staff could affect his job." *Id.* They "began to fight every time there was a complaint or when one of the children was harassed or threatened by someone for violating the rules . . . ." *Id.* It negatively affected their sexual

relationship. *Id.* at 6-7. They both "lost many hours and nights of sleep, fretting, thinking, fighting, arguing, and talking about the complaints . . . ." *Id.* at 7. "Dedric eventually decided that he could no longer stay in the apartment" because he "feared losing his job due to a domestic violence or other call to law enforcement by the neighbors because of our constant fighting." *Id.* He got "his own apartment in a different apartment complex." *Id.*

Kimberly Belcher also stated, via affidavit, that her daughter, A. S., "had a dream that Ms. Brittany (apartment manager) and a police officer came and arrested [Kimberly] while her brother and sister were still asleep and that she had to call and tell her dad about it." *Id.* According to Belcher, her children "still get scared when they see a police officer in the apartment complex," and "especially A. C. . . . has developed a fear of police officers and authority figures." *Id.*[18]

Therefore, the Court finds that Plaintiffs presented sufficient evidence to create a genuine dispute of material fact as to whether they suffered damages caused by the

---

[18]Plaintiff Dedric Belcher and the minor Plaintiffs also provided affidavit testimony. *See* Exhibit 7 to Motion for Partial Summary Judgment *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-7; Exhibit 2 to Motion for Partial Summary Judgment, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-2; Exhibit 3 to Motion for Partial Summary Judgment, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-3; Exhibit 8 to Motion for Partial Summary Judgment, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-8; Exhibit 9 to Motion for Partial Summary Judgment, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. July 11, 2016), ECF No. 50-9. The Court need not discuss these affidavits in detail. It is sufficient to note that they contain evidence of Plaintiffs' damages substantially similar to that in Kimberly Belcher's affidavits.

promulgation and enforcement of the disputed rules.

## J. *Discrimination, Familial Status – ALFHL*

The ALFHL makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with it, because of race, color, religion, sex, familial status, or national origin." ALA. CODE § 24-8-4(1). For the reasons provided in the Court's discussion of Plaintiffs' FHA claim, the Court likewise denies Defendants' Motion for Summary Judgment as to Plaintiffs' claim of familial status discrimination under the ALFHL.

## K. *Disparate Impact, Race – FHA*

Next, Defendants argue that Plaintiffs have no evidence to support their claim that the disputed rules had a disparate impact on African-Americans. The FHA "applies not just to intentional racial discrimination but also to conduct with an unjustified racially disparate impact." *City of Fort Lauderdale v. Scott*, 551 F. App'x 972, 976 (11th Cir. 2014). "A showing of significant discriminatory effect suffices to demonstrate a prima facie violation of the Fair Housing Act. A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that the decision has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Bonasera*, 342 F. App'x at 585.

"Typically, a disparate impact is demonstrated by statistics." *Id.* There is "no single test" to determine whether a rule has a disparate impact on a particular

protected class, but "certain guidelines have developed." *Id.* First, "it may be inappropriate to rely on absolute numbers rather than on proportional statistics." *Id.* Next, "statistics based on the general population should bear a proven relationship to the actual applicant flow." *Id.* Finally, "the appropriate inquiry is into the impact on the total group to which a policy or decision applies." *Id.* "Simply showing that a few houses are affected . . . does not come close to establishing a disparate impact." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218 (11th Cir. 2008). But conduct "that has a racially disparate impact does not always violate the" FHA. *Scott*, 551 F. App'x at 976. "Instead, when conduct has a racially disparate impact, the conduct nonetheless comports with the [FHA] so long as the conduct has a legitimate nondiscriminatory goal and the goal can not be feasibly achieved by means having a less-disparate impact." *Id.* at 976-77.

Plaintiffs contend that the recordings and transcripts of two conversations between Plaintiff Kimberly Belcher and Grand Reserve employees support their claim of disparate impact based on race. The first recording and transcript are of Kimberly Belcher's conversation with a Grand Reserve employee named Nancy Stevens. *See* Exhibit 19 to Response at 14, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Jan. 10, 2017), ECF No. 79; Exhibit 24 to Response at 74-79, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Jan. 10, 2017), ECF No. 79. Neither Belcher nor Stevens said anything about the new rules having a disparate impact – or any impact whatsoever – on African-Americans as a protected class. Belcher briefly complained about the effect that the rule had on her

33

family, but that is not sufficient to prove that the rule had a disparate impact on African-Americans as a class.

The second recording and transcript are of Belcher's conversation with Khelsi Harvest. *See* Exhibit 19 [79], at 14; Exhibit Exhibit 25 to Response at 80-126, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Ala. Jan. 10, 2017), ECF No. 79. Belcher told Harvest: "[O]ne of the sheriffs told me that it's the white people who are complaining about blacks being outside . . . ." *Id.* at 106. Later in the conversation, Harvest stated, "[W]e've had a lot of people to move out. To me, personally, I think they're moving out, because it's, like, too many black people," *id.* at 108, and Belcher claimed that enforcement of the rules was biased. *Id.* at 112-115. But this exchange is insufficient to prove that the promulgation and enforcement of the rules had a disparate effect on African-Americans. As noted above, "[s]imply showing that a few houses are affected . . . does not come close to establishing a disparate impact." *Schwarz*, 544 F.3d at 1218. Moreover, the recorded conversation provided no proportional numbers as to the relative effect the rules had on African-Americans and whites as groups. *Bonasera*, 342 F. App'x at 585.

Plaintiffs also contend that Khelsi Harvest's affidavit supports their claim of disparate impact based on race. Harvest generally compared the behavior of the complex's white children to that of the African-American children. She stated: "Black children very often wandered around the complex in groups. Few white children wandered in groups." Exhibit 18 [79], at 6. She also said: "It was the black kids that hung out together at night [and] not the white kids." *Id.* at 8. She claimed that "[n]o

34

white residents complained about the new rules," while "[s]everal black residents did complain . . . about the new rules." *Id.* at 11.

Harvest's affidavit testimony, while making general comparisons of the effects the rules had on white and African-American residents, is not sufficient to prove disparate effect under Eleventh Circuit precedents. As noted above, "[s]imply showing that a few houses are affected . . . does not come close to establishing a disparate impact." *Schwarz*, 544 F.3d at 1218. Moreover, Harvest's affidavit provided no numbers or statistics to demonstrate the relative effect the rules had on African-Americans and whites as groups. *Bonasera*, 342 F. App'x at 585.

For these reasons, the Court concludes that Plaintiffs have not provided sufficient evidence to demonstrate that the promulgation and enforcement of the disputed rules had a disparate effect on African-American tenants. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to this issue.

## L. *Disparate Impact, Race – ALFHL*

Assuming that a claim of disparate impact is cognizable under the ALFHL, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim under the ALFHL that the promulgation and enforcement of the disputed rules had a disparate impact on African-Americans, for the same reasons provided in its discussion of Plaintiffs' FHA claim of disparate impact on the basis of race.

## M. *Disparate Impact, Disability – FHA*

Defendants argue that Plaintiffs have no evidence that the promulgation and enforcement of the disputed rules had a disparate impact on disabled persons.

Plaintiffs did not address this argument in briefing and, therefore, did not direct the Court to any evidence of a disparate impact on the basis of disability. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' FHA claim of disparate impact on the basis of disability.

### N.    *Disparate Impact, Disability – ALFHL*

Assuming that a claim of disparate impact is cognizable under the ALFHL, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim under the ALFHL that the promulgation and enforcement of the disputed rules had a disparate impact on disabled persons, for the same reasons provided in its discussion of Plaintiffs' FHA claim of disparate impact on the basis of disability. Plaintiffs did not direct the Court to any evidence of a disparate impact on disabled persons.

### O.    *Disparate Impact, Familial Status – FHA*

Defendants argue that Plaintiffs do not have sufficient evidence to support an FHA claim of disparate impact on the basis of familial status. Plaintiffs cite the same evidence they cited in support of their FHA claim of disparate impact on the basis of race. As noted above, "[s]imply showing that a few houses are affected . . . does not come close to establishing a disparate impact." *Schwarz*, 544 F.3d at 1218. Plaintiffs must demonstrate that the promulgation and enforcement of the rules had a proportionally disparate effect on tenants with children in comparison to homes without children. *Bonasera*, 342 F. App'x at 585. It is not enough to show that Plaintiffs, or even a few different tenants with families, were adversely affected by the promulgation and enforcement of the disputed rules. *See Steed v. Everhome Mortg. Co.*,

477 F. App'x 722, 727 (11th Cir. 2012).

Neither the recorded conversations nor the affidavit from Khelsi Harvest meet this standard, insofar as neither evidentiary source contains comparisons of the effect the rules had on tenants with children to the effect the rules had on tenants without children. At best, Plaintiffs have demonstrated that a few tenants with children were adversely affected by the rules, but that is not sufficient to meet the burden of proof for a disparate impact claim. The Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' FHA claim of disparate impact on the basis of familial status.

## P.    *Disparate Impact, Familial Status – ALFHL*

Assuming that a claim of disparate impact is cognizable under the ALFHL, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim under the ALFHL that the promulgation and enforcement of the disputed rules had a disparate impact on the basis of familial status, for the same reasons provided in its discussion of Plaintiffs' FHA claim of disparate impact on the basis of familial status.

## Q.    *Retaliation – FHA*

Defendants argue that Plaintiffs do not have sufficient evidence to support a claim of retaliation under the FHA. Specifically, Defendants contend that Plaintiffs can not demonstrate that any alleged protected activity resulted in any adverse action taken against them.

It is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right

granted or protected by" the FHA. 42 U.S.C. § 3617. "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux*, 598 F. App'x at 644. According to HUD regulations, "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race . . . of such persons" is an example of unlawful retaliatory conduct. 24 C.F.R. § 100.400(c)(2). This Court has previously cited HUD regulations when addressing an FHA retaliation claim. *Hall*, 160 F. Supp. 2d at 1321-22.

Plaintiffs offered evidence that Defendants' agents threatened, intimidated, and interfered with them "in their enjoyment of a dwelling because of . . . race . . . ." 24 C.F.R. § 100.400(c)(2). As detailed above, Plaintiffs' own affidavit testimony regarding threats and harassment, when combined with the evidence of a racially discriminatory motive, is sufficient to make out a prima facie case of retaliation under § 3617. Relying on this evidence, a fact-finder could reasonably find that Defendants promulgated and enforced the disputed rules in direct response to Plaintiffs' enjoyment of the apartment complex's facilities. Of course, Defendants dispute this evidence, but the Court is not permitted to weigh the evidence or make credibility determinations. *Wate*, 839 F.3d at 1021. Rather, it "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ.*, 830 F.3d at 1252. The Court denies Defendants' Motion for Summary Judgment as to Plaintiffs' FHA retaliation claim.

## R.    *Retaliation – ALFHL*

The ALFHL provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the enjoyment of, [or] exercise of . . . any right granted under this chapter." Ala. Code § 24-8-8. For the same reasons provided in the Court's discussion of Plaintiffs' FHA retaliation claim, the Court denies Defendants' Motion for Summary Judgment as to Plaintiffs' ALFHL retaliation claim.

## S.    *Negligent Supervision/Training/Hiring*

Defendants argue that Plaintiffs do not have sufficient evidence to support a claim of negligent supervision, training, or hiring. They argue that their employees were trained and competent in fair housing laws. They also argue that Plaintiffs have no evidence that the Grand Reserve's owners knew or, in the exercise of ordinary care, should have known that their employees were incompetent.

Alabama courts have described the elements of a claim for negligent hiring, supervision, or training:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003). Also, "a party alleging negligence supervision and hiring must prove the underlying wrongful conduct of the defendant's agents." *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala.

2003).

Plaintiffs did not respond to Defendants' arguments regarding negligent supervision, training, or hiring. Therefore, Plaintiffs did not direct the Court to any evidence that Defendants had "notice or knowledge, either actual or presumed" of their employees alleged incompetency. *Voyager Ins. Cos.*, 867 So. 2d at 1073. The Court declines to search the record for evidence to support Plaintiffs' claims. Defendants' Motion for Summary Judgment is granted as to this issue.

## T.     *Breach of Contract/Covenant of Quiet Enjoyment/Constructive Eviction*

Defendants argue that Plaintiffs do have sufficient evidence to support a claim for breach of the covenant of quiet enjoyment. Specifically, Defendants contend that Plaintiffs must prove that their apartment was "rendered unfit for habitability," such that they were constructively evicted from the premises. Brief in Support of Motion for Summary Judgment [63], at 59. They also argue that Plaintiffs have not established that Defendants manifested an intent to evict them from the premises. *Id.* at 64.

"[T]here is implied in every leasing a covenant of quiet enjoyment." *Johnson v. Northpointe Apts.*, 744 So. 2d 899, 902 (Ala. 1999). "The landlord warrants that the tenant will not be disturbed in possession by any other person with a superior legal right to possession. Moreover, the landlord covenants not to evict the tenant himself, actually or constructively." *Id.* "A breach of the covenant of quiet enjoyment occurs when the landlord substantially interferes with the tenant's beneficial use or enjoyment of the premises. Even if not substantial enough to rise to the level of a constructive eviction . . . , such interference may constitute a breach of the covenant

of quiet enjoyment entitling the tenant to damages." *Id.*

"Alabama does not recognize constructive eviction and breach of quiet enjoyment as separate claims. Rather, Alabama follows the common-law concept that a tenant has a covenant to quiet enjoyment of the premises," and "an action for constructive eviction must be framed as a violation of the covenant of quiet enjoyment." *Bowdoin Square, LLC v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091, 1104 (Ala. 2003). A "constructive eviction," therefore, is simply a more severe form of the breach of the covenant of quiet enjoyment. *Johnson*, 744 So. 2d at 902. Accordingly, the Court construes Plaintiffs' claims of breach of contract, breach of the covenant of quiet enjoyment, and constructive eviction as a single claim of breach of the covenant of quiet enjoyment.

Among other things, "the covenant of quiet enjoyment is breached by threats or other forms of intimidation before the expiration of the tenancy." *Horne v. TGM Assocs., LP*, 56 So. 3d 615, 627 (Ala. 2010) (citing *Johnson*, 744 So. 2d at 902). The question is whether Defendants' actions "materially affect[ed] the value and interfer[ed] with the present right to use and to the possession of a part of the premises . . . ." *Wolff v. Woodruff*, 61 So. 2d 69, 73 (Ala. 1952). As discussed at length above, Plaintiffs presented evidence that Defendants' alleged actions deprived them of the enjoyment of certain benefits of the lease – such as use of the pool, gym, sauna, playground, and the ability to simply be outside of their apartment during certain hours. Moreover, Plaintiffs presented evidence that Defendants threatened and harassed them with enforcement of the disputed rules and potential fines. Accordingly, Plaintiffs presented sufficient evidence to create a genuine dispute of material fact as

to whether Defendants breached the covenant of quiet enjoyment.

Of course, Defendants dispute Plaintiffs' evidence, but the Court is not permitted to weigh the evidence or make credibility determinations. *Wate*, 839 F.3d at 1021. Rather, it "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ.*, 830 F.3d at 1252. Moreover, Defendants' arguments are unavailing insofar as the alleged breaches of the covenant of quiet enjoyment do not have to be so severe as to constitute a constructive eviction for Plaintiffs to be entitled to damages. *Johnson*, 744 So. 2d at 902. The Court denies Defendants' Motion for Summary Judgment [62] as to this issue.

## U. *Compensatory Damages*

Defendants argue that Plaintiffs "offer no evidence to support their claim that they are entitled to damages in this case." Brief in Support of Motion for Summary Judgment [63], at 67. Based on the legal citations in support of this argument, Defendants apparently contend that Plaintiffs are not entitled to compensatory damages for their FHA claims.

"Victims of discrimination in violation of the FHA are entitled to actual damages. Although the statute provides little guidance beyond this statement, anger, embarrassment, and emotional distress are clearly compensable injuries under this standard." *Banai v. Secretary, HUD*, 102 F.3d 1203, 1207 (11th Cir. 1997); *see also* 42 U.S.C. § 3613(c)(1). As discussed at length above, Plaintiffs have provided evidence of actual damages compensable under the FHA. Accordingly, the Court denies Defendants' Motion for Summary Judgment [62] as to this issue.

## V.    *Punitive Damages*

Finally, Defendants argue that Plaintiffs do not have sufficient evidence to support a claim for punitive damages under the FHA. Specifically, Defendants argue that Plaintiffs do not have sufficient evidence of intentional discrimination.

The FHA explicitly provides that "the court may award to the plaintiff actual and punitive damages . . . ." 42 U.S.C. § 3613(c)(1). While the "Eleventh Circuit has not set a standard for punitive damages in Fair Housing Act cases," this Court has held that the Supreme Court's decision in *Kolstad v. ADA*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999), should apply to claims for punitive damages in FHA cases. *United States v. Gumbaytay*, 757 F. Supp. 2d 1142, 1151 (M.D. Ala. 2010). Therefore, punitive damages are available in "cases involving intentional discrimination." *Kolstad*, 527 U.S. at 534. "[T]he focus should be on the actor's state of mind, not on the actor's conduct." *Gumbaytay*, 757 F. Supp. 2d at 1151 (citing *Kolstad*, 527 U.S. at 534-35, 537-39). The fact-finder "may be permitted to assess punitive damages . . . when the defendant's conduct . . . involves reckless or callous indifference to the federally protected rights of others." *Kolstad*, 527 U.S. at 536. In other words, the defendant "must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.*

As discussed at length above, Plaintiffs provided evidence that Defendants' promulgation and enforcement of the disputed rules was motivated by an intent to discriminate against African-Americans. Accordingly, the Court denies Defendants' Motion for Summary Judgment [62] as to Plaintiffs' claim for punitive damages.

## IV. PLAINTIFFS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT [56]

In their Amended Motion for Partial Summary Judgment [56], Plaintiffs seek summary judgment on the following issues: their claims of familial status discrimination under the FHA and ALFHL, their claims of retaliation under the FHA and ALFHL, their claim for breach of contract and the covenant of quiet enjoyment, and their claim of negligence per se.

### A. *Discrimination, Familial Status – FHA*

Plaintiffs argue that they are entitled to summary judgment on their claim of discrimination on the basis of familial status under the FHA. As discussed above, the rules at dispute in this case are facially discriminatory. However, Defendants contend that all of the disputed rules were promulgated "with the intent to promote a safe, family-friendly environment for its residents." Brief in Support of Motion for Summary Judgment [63], at 46. Several Circuits have held that, to justify disparate treatment under the FHA, a defendant must "show either: (1) that the restriction benefits the protected class, or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House, Inc.*, 468 F.3d at 1125.

Defendants presented an affidavit from Brittany Allen, who was the Property Manager at the Grand Reserve during the events in question. *See* Affidavit of Brittany Allen [64-1], at 1. She stated:

> In or around March 2015, I began to receive an increasing number of complaints from residents about excessive noise, profanity, use of offensive language (including the n-word), condoms on the playground,

44

underwear in the gym, marijuana use on the playground, vandalism, littering, and the like. I also witnessed some of these problems myself. I have a young child and maintaining a family-friendly atmosphere at Grand Reserve was important to me.

*Id.* at 1-2. With respect to Plaintiffs, she testified: "I witnessed the Belchers' oldest child engaged in an inappropriate simulated sexual act with a boy after getting off the school bus one day. Specifically, I witnessed her gyrating explicitly with the boy, in a bent-over position." *Id.* at 2. She continued:

I lived in the same building as the Belchers and, on more than one occasion, I heard loud arguments from their apartment. During one particularly loud argument, the police were called to the Belchers' apartment. I also regularly heard their children use loud profanity, including the n-word, and create a significant disturbance for other residents. I received multiple complaints about noise coming from the Belchers' apartment and from their children while out on the Grand Reserve property.

*Id.* at 2. Defendants attached a copy of a written complaint about the excessive noise from Plaintiffs' apartment that Allen received from another resident. *Id.* at 9. The resident complained that Kimberly Belcher was "always screaming at children, stomping, cussing, fussing, walking loud," and "play[ing] music so loud" at "2:00 am, 4:00 am, [and] all day on weekends." *Id.*

Regarding her reasons for the new rules, Brittany Allen testified:

In an effort to promote a more family-friendly environment at Grand Reserve, I drafted a notice to the residents addressing the concerns raised. In posting this notice, it was not my intent to discriminate against families or children. To the contrary, my intent in posting the rule was to promote a more family-friendly environment at the Grand Reserve where residents of all ages could enjoy the amenities without fear of encountering obscene language, sexually explicit activities, illegal drug use, vandalism, etc. My intent was also to address an increasing number of resident complaints, to further the objectives of safety, and to deter

objectively offensive conduct, excessive noise, and unreasonable disturbances.

*Id.* at 3.

Defendants also presented an affidavit from Savannah Cox, the Operations Manager for the Grand Reserve. *See* Affidavit of Savannah Cox at 1, *Belcher v. Grand Reserve MGM, LLC*, No. 2:15-CV-834-KS-TFM (M.D. Al. Nov. 17, 2016), ECF No. 66-1. Cox stated that the Grand Reserve still requires that children under the age of sixteen be accompanied by an adult when using the pools. *Id.* at 4. She said: "This rule is in place for safety reasons. There are no lifeguards on duty at the Grand Reserve pools. . . . The purpose of this policy is to remind tenants of the need to supervise children at the pool due to safety concerns." *Id.* Likewise, the Grand Reserve still requires anyone under the age of sixteen to be accompanied by an adult when using the gym. *Id.* According to Cox, "[t]his rule is in place for safety reasons." *Id.*

This evidence is sufficient to create a genuine dispute of material fact as to whether the alleged disparate treatment is justified. *See Cmty. House, Inc.*, 468 F.3d at 1125. Therefore, the Court denies Plaintiffs' Amended Motion for Partial Summary Judgment as to this issue.

## B.    *Discrimination, Familial Status – ALFHL*

Plaintiffs argue that they are entitled to summary judgment on their claim of discrimination on the basis of familial status under the ALFHL. The Court denies Plaintiffs' Amended Motion for Summary Judgment on this issue for the same reasons provided in its discussion of Plaintiffs' familial status discrimination claim under the

FHA.

## C.    *Breach of Contract/Covenant of Quiet Enjoyment*

Plaintiffs argue that they are entitled to summary judgment on their claim of breach of the covenant of quiet enjoyment. As discussed above, the covenant of quiet enjoyment can be "breached by threats or other forms of intimidation before the expiration of the tenancy." *Horne*, 56 So. 3d at 627. The question is whether Defendants' actions "materially affect[ed] the value and interfer[ed] with the present right to use and to the possession of a part of the premises . . . ." *Wolff*, 61 So. 2d at 73. Plaintiffs claim that Defendants threatened and harassed them with enforcement of the disputed rules and potential fines, interfering with their enjoyment of the premises. Plaintiffs also claim that the promulgation and enforcement of the disputed rules deprived them of the enjoyment of certain benefits of the lease – such as use of the pool, gym, sauna, playground, and the ability to simply be outside of their apartment during certain hours.

Defendants presented sufficient evidence to create a genuine dispute of material fact as to whether they "materially affect[ed] the value and interfer[ed] with the present right to use and to the possession of a part of the premises . . . ." *Id.* First, Brittany Allen testified via affidavit that the disputed rules were "not strictly enforced." Affidavit of Brittany Allen [64-1], at 3. In fact, she said that Plaintiffs "were only fined for late payment of rent, and excessive noise" – not for violating the disputed rules. *Id.* Moreover, she said: "There is no record of this fine being entered into the Belcher's ledger nor is there a record of the Belchers paying this fine. . . . [T]he only

47

fines the Belchers ever paid were fines for late payment of rent." *Id.*

After the disputed rules were posted, she "did not observe any discernable change in the way in which Grand Reserve resident families enjoyed the property's amenities." *Id.* She "saw children, with and without adult supervision, continue to play outside, ride their bicycles and scooter, play on the playground, go for walks, swim in the pool, etc." *Id.* at 3-4. She said there had "not been any fines issued to tenants for violation of" the "Pool Rule," "nor is there any intent by Grand Reserve to do so." *Id.* at 4. According to her, "no tenant, including the Belchers, has ever been fined for violating a rule pertaining to curfew, adult supervision, or prohibition of access to certain areas of the property by children under a certain age." *Id.* at 5.

Allen also testified that "the Grand Reserve has never threatened to evict the Belchers for any reason other than non-payment of rent." *Id.* at 6. She said: "No action of the Grand Reserve or any of its employees was ever taken with the intent to force or otherwise cause, persuade, or encourage the Belchers to move out of their apartment at the Grand Reserve for any reason other than non-payment of rent." *Id.* at 7.

Defendants also presented the affidavit of Savannah Cox. She said: "From the time I became Operations Manager, I regularly observed children at play on the Grand Reserve property, with and without adult supervision. I saw children riding bicycles, swimming in the pools, walking around the property, playing on the playground, and enjoying the amenities." Affidavit of Savannah Cox [66-1], at 2. She also said that "neither the Belchers nor any individual member of the Belcher family has ever paid a fine issued by Grand Reserve other than for late payment of rent." *Id.* at 3. "Although

48

the Belchers received written notice of a fine for excessive noise related to a domestic dispute at their apartment, this fine was never actually assessed, nor was it paid." *Id.* Like Allen, Cox testified: "The Grand Reserve has never evicted any tenant for violation of any rule relating to curfew, adult supervision, or access to amenities. The Grand Reserve has never threatened to evict the Belchers for any reason other than non-payment of rent." *Id.* at 4.

Finally, Grand Reserve notes deposition testimony from the minor Plaintiffs demonstrating that they enjoyed the premises. Minor Plaintiffs L. B. and A. C. testified that they rode their bicycles around the property. Exhibit 14 [57], at 102; Exhibit 12 [57], at 16. Minor Plaintiffs A. C. and A. S. testified that they used the swimming pools without adult supervision. Exhibit 12 [57], at 9; Exhibit 13 [57], at 47-48. A. C. testified that she enjoyed going to the playground. Exhibit 12 [57], at 7-8. A. C. also testified that she enjoyed going to the gazebo after school, and that she and her friends would stay there until the street lights came on, without any adult supervision. *Id.* at 12.

This evidence creates a genuine dispute of material fact as to whether Defendants' actions "materially affect[ed] the value and interfer[ed] with the present right to use and to the possession of a part of the premises . . . ." *Wolff*, 61 So. 2d at 73. Therefore, the Court denies Plaintiffs' Amended Motion for Partial Summary Judgment as to this issue.

## D.    *FHA & ALFHL Retaliation*

Plaintiffs argue that they are entitled to summary judgment on their claims of retaliation under the FHA and ALFHL. Defendants presented sufficient evidence to

create a genuine dispute of material fact as to these claims. Specifically, the affidavits from Brittany Allen and Savannah Cox create a factual dispute as to whether Defendants "coerce[d], intimidate[d], threaten[ed], or interfere[d] with [Plaintiffs] in the exercise or enjoyment of, or on account of [their] having exercised or enjoyed . . . any right granted or protected by" the FHA. 42 U.S.C. § 3617. The Court denies Plaintiffs' Amended Motion for Partial Summary Judgment as to this issue.

## E.    *Negligence Per Se*

Plaintiffs argue that they are entitled to summary judgment on their claim of negligence per se. Plaintiffs argue that Defendants' violations of the FHA and ALFHL constitute negligence per se which is actionable under Alabama common law.

"The doctrine of negligence per se or negligence as a matter of law arises from the premise that the legislature may enact a statute that replaces the common-law standard of the reasonably prudent person with an absolute, required standard of care." *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 930-31 (Ala. 2005). To recover on a claim of negligence per se, Plaintiffs must prove:

> (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury.

*Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009).

The Court granted Defendants' Motion for Summary Judgment as to several of Plaintiffs' claims under the FHA and ALFHL, and it found that there exist genuine disputes of material fact as to the remaining claims of racial discrimination, familial

status discrimination, and retaliation. Plaintiffs have not yet demonstrated that Defendants violated the FHA and ALFHL, as required by the third element of a negligence per se claim. Therefore, the Court denies their Amended Motion for Partial Summary Judgment as to the claim of negligence per se.

## V. CONCLUSION

For the reasons above, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [62]. Specifically:

- The Court **denies** Defendants' Motion for Summary Judgment as to Defendants' request that the Court strike Plaintiffs' affidavits;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' request for injunctive relief;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of steering under 42 U.S.C. § 3604(a);

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of racial discrimination under the FHA;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of racial discrimination under the ALFHL;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disability discrimination under the FHA;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disability discrimination under the ALFHL;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claims of familial status discrimination under the FHA;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claims of familial status discrimination under the ALFHL;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of race under the FHA;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of race under the ALFHL;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of disability under the FHA;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of disability under the ALFHL;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of familial status under the FHA;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of disparate impact on the basis of familial status under the ALFHL;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of retaliation under the FHA;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of retaliation under the ALFHL;

- The Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of negligent hiring, training, or supervision;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of breach of the covenant of quiet enjoyment;

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of compensatory damages; and

- The Court **denies** Defendants' Motion for Summary Judgment as to Plaintiffs' claim of punitive damages.

Finally, the Court **denies** Plaintiffs' Amended Motion for Partial Summary

Judgment.

     SO ORDERED AND ADJUDGED this   11th   day of   September  ,
2017.

                                s/Keith Starrett                  
                              UNITED STATES DISTRICT JUDGE