IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KIMBERLY BELCHER, *et al.*　　　　　　　　　　　　　　　　PLAINTIFFS

v.　　　　　　　　　　　　　　CIVIL ACTION NO. 2:15-CV-834-KS-WC

THE GRAND RESERVE MGM, LLC, *et al.*　　　　　　　　　DEFENDANTS

## M<span style="font-variant:small-caps">EMORANDUM</span> O<span style="font-variant:small-caps">PINION AND</span> O<span style="font-variant:small-caps">RDER</span>

For the reasons below, the Court **denies** Plaintiffs' Motion to Alter, Amend, or Vacate [143] the Court's prior opinion and judgment. The Court also **grants in part and denies in part** Defendant's Motion to Tax Costs to Plaintiff [147].

### A.　*Motion to Alter, Amend, or Vacate [143]*

Plaintiffs argue that the Court should alter, amend, or vacate its previous opinion pursuant to Rule 59. "Rule 59(e) allows courts to alter judgments only where there is 'newly-discovered evidence or manifest errors of law or fact.'" *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016). Generally, Rule 59 "may not be used to raise new legal theories or arguments . . . ." *Id.* at 1337. Likewise, a "Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

　　　1.　*Consideration of Brittany Allen's Motive*

1

First, Plaintiffs contend that the Court improperly considered Defendants' intentions in promulgating the disputed rules. Plaintiffs argue that Defendants' intentions are irrelevant in a facial discrimination analysis, and that the Court erred by considering Brittany Allen's intentions.

The Court did not rule that the disputed rules were not discriminatory. The basis of the Court's ruling on Plaintiffs' familial status discrimination claims under the Fair Housing Act ("FHA") and Alabama Fair Housing Law was that Defendant's actions were justified responses to legitimate safety concerns raised by residents of the apartment complex. To the extent Allen promulgated the disputed rules in response to legitimate safety concerns raised by residents of the apartment complex, her intent is indeed relevant. The Court's discussion of Ms. Allen's intent was not to mitigate the facially discriminatory nature of the rules. Rather, assuming that the rules were facially discriminatory on the basis of familial status, they were justified responses to legitimate safety concerns raised by residents of the apartment complex.

2. *Enforcement of the Rules*

Next, Plaintiffs argue that the Court erred by ruling that Defendants did not discriminate on the basis of familial status because the disputed rules were never enforced. But the Court did not rule on this basis. The Court assumed that the rules were facially discriminatory on the basis of familial status and held that they were justified responses to legitimate safety concerns raised by residents of the apartment complex. Regardless, the record contained evidence to support a finding that the rules

were never enforced.

### 3. *Evidence of Retaliation*

Plaintiffs argue that the Court erred in finding that there was no credible evidence that Defendants subjected them to adverse action because of protected activity. First, Plaintiffs argue that Defendants' notice of the disputed rules constituted a threat or intimidation within the meaning of the FHA because it provided that the apartment complex would issue fines upon a second violation of the rules.

The Eleventh Circuit has held that *actually assessing* fines did not constitute coercion, intimidation, or threats in violation of the FHA. *See Wood v. Briarwinds Condominium Ass'n Bd. of Directors*, 369 F. App'x 1, 3 (11th Cir. 2010). Therefore, it stands to reason that warning of potential fines upon violation of posted rules does not constitute retaliation under the FHA.

Regardless, "[t]o establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Phillipeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015). Therefore, even if the notice constituted a threat or intimidation under the FHA, Plaintiffs were required to present evidence that Defendants posted it because of their protected activity. In the Court's opinion, Plaintiffs did not present credible evidence demonstrating a causal link between the rule notice and any

protected activity. In fact, Plaintiffs did not articulate in briefing what "protected activity" the rules were posted in retaliation against.

Next, Plaintiffs argue that Plaintiff Dedric Belcher provided credible testimony regarding retaliatory conduct by Defendants and/or their agents. First, the Court explained at length in its previous opinion that it does not find Plaintiffs' testimony to be credible, for a variety of reasons. Regardless, Dedric Belcher's testimony highlighted by Plaintiffs in briefing does not demonstrate that a causative relationship exists between the alleged adverse action and Plaintiffs' protected activity. In other words, Mr. Belcher's testimony does not demonstrate a retaliatory motive.

*4. Legitimate Safety Concerns*

Next, Plaintiffs contend that the Court erred by failing to make an individualized inquiry of the legitimacy or reasonableness of the rules as responses to safety concerns, and by failing to inquire as to whether the disputed rules were the least restrictive means of accomplishing the articulated safety goals. Plaintiffs also suggest that the Court prevented them from presenting proof of pretext.

Plaintiffs were free to present whatever evidence they wished, subject to the Rules of Evidence. Plaintiffs' suggestion that the Court prevented them from presenting proof that Defendants' stated reasons for the rules were pretextual is false. Indeed, Plaintiffs knew that Defendants intended to argue that the rules were justified by legitimate safety concerns, as Defendant raised the issue in dispositive

4

motions.

As for the legitimacy of Defendants' reasons, it is not the Court's job to rebut Defendants' evidence. That task falls to the Plaintiffs. If Plaintiffs believed that Defendants' stated reasons for the rules were pretextual, then it was Plaintiffs' responsibility to offer credible evidence at trial to that effect and argue the point in post-trial briefing. The Court based its decision on the record evidence and exercised its discretion as the fact-finder in assessing the credibility and weight that should be given to the evidence. The Court's opinion listed specific undisputed examples of criminal and/or destructive behavior by minors on the Grand Reserve property.

Moreover, Plaintiffs first raised the issues of "least restrictive means" and "individualized inquiries" in the present motion. "Rule 59(e) motions cannot be used to . . . raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343.

5.   *Findings of Fact*

Finally, Plaintiffs contend that some of the Court's findings of fact were clearly erroneous and against the great weight of the evidence. Plaintiffs did not connect these factual issues to any particular claim or argue that different factual findings on these points would have made a difference in the outcome. Plaintiffs apparently take issue with the Court's assessment of their credibility. But in a bench trial, the Court functions as the fact finder, and has a responsibility to assess the credibility of witnesses and the weight given to evidence. *See, e.g. United States v. Ramirez-Chilel*,

289 F.3d 744, 749 (11th Cir. 2002); *Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144, 1149 (11th Cir. 2018). The Court is not persuaded that its factual findings were clearly erroneous or against the great weight of the evidence.

For all these reasons, the Court **denies** Plaintiffs' Motion to Alter, Amend, or Vacate [143].

### B.     *Motion to Tax Costs*

On November 6, 2018, Defendants filed a Bill of Costs [146] and a Motion to Tax Costs [147] seeking an award of $4,650.76 in costs. Plaintiffs objected [149] to the Bill of Costs in its entirety.

Rule 54 generally provides that "costs – other than attorney's fees – should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Court's discretion under the Rule 54 is limited by statute. 28 U.S.C. § 1920. Section 1920 enumerates specific categories of expenses that the Court may tax as costs. 28 U.S.C. § 1920. "Rule 54(d) gives rise to a presumption that costs will be awarded, and the party opposing the award must overcome this presumption." *Nationwide Mut. Ins. Co. v. Nall's Newton Tire*, 2015 WL 8207478, at *5 (S.D. Ala. Dec. 7, 2015) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).

### 1.     *Timeliness*

First, Plaintiffs argue that Defendants' Bill of Costs is untimely under the Court's Local Rules. Local Rule 54.1 provides that "[r]equests for taxation of costs . . . shall be filed with the Clerk within 35 days after entry of final judgment from which

an appeal may be taken." M.D. Ala. L.R. 54.1(a). The Court entered a Final Judgment [142] on October 2, 2018. Defendants filed their Bill of Costs [146] on November 6, 2018 – exactly thirty-five days after entry of the Court's Final Judgment. Therefore, the Bill of Costs was not untimely.

    2.    *Printing Costs*

Next, Plaintiffs object to Defendants' submission of printing costs incurred on April 6-7, 2017, in the amount of $296.91. Plaintiffs contend that it is unclear what the documents were and how they were used in the case. In response, Defendants represented that the invoices were for printing expenses incurred in preparation of trial exhibits.

Section 1920 specifically allows taxation of costs incurred for "making copies of any materials where the copies are necessarily obtained for use in the case . . . ." 28 U.S.C. § 1920(4). "In evaluating copy costs, a district court should consider whether the prevailing party would have reasonably believed that it was necessary to copy the documents at issue. Actual use of the information contained in the document copied is not a prerequisite to finding that it was necessary to copy the document." *Watson v. Lake County*, 492 F. App'x 991, 997 (11th Cir. 2012).

The Court's Scheduling Order [20] of December 30, 2015, ordered the parties to file exhibit lists and furnish opposing counsel all exhibits and tangible evidence to be used at trial on or before April 21, 2017. Therefore, these printing costs were necessarily obtained for use in the case in that Defendants were complying with the

7

Court's order. The Court overrules Plaintiffs' objection to this item.

   3.   *Transcripts of PI Hearing and Trial*

Next, Plaintiffs object to taxation of the costs of transcripts of the preliminary injunction hearing and trial. Plaintiffs contend that these transcripts were not necessary but were purchased solely for the convenience of counsel.

This Court has previously allowed taxation of costs for a transcript of a preliminary injunction hearing. *Pearson v. Colonial Fin. Serv., Inc.*, 530 F. Supp. 599, 602 (M.D. Ala. 1982). Moreover, Defendants used these transcripts at trial to impeach the testimony of Plaintiff Kimberly Belcher on cross-examination. Defendants also used the transcripts during direct examination of Savannah Cox. Accordingly, the Court finds that purchasing the transcript of the preliminary injunction hearing was reasonably necessary for use in the case.

As for the trial transcript, this Court has previously held that the "cost of trial transcripts may be taxed against a losing party when such transcripts are necessary for use in the case." *Snow v. Boston Mut. Life Ins. Co.*, 2014 WL 641879, at *3 (M.D. Ala. Feb. 19, 2014) (citing 28 U.S.C. § 1920(2)). Obtaining a trial transcript is reasonably necessary when a party must respond to a post-trial motion under Rule 59(e). *Id.* (citing *Denton v. DaimlerChrysler Corp.*, 645 F. Supp. 2d 1215, 1228 (N.D. Ga. 2009). Additionally, this was a bench trial, and the Court required the parties to file post-trial briefs, and both sides extensively cited the transcripts in their briefing. Accordingly, the Court finds that the trial transcripts were necessarily obtained for

8

use in the case and overrules Plaintiffs' objection.

*4. Deposition Transcripts*

Next, Plaintiffs object to the taxation of costs of the Plaintiffs' depositions. Plaintiffs contend that the transcripts were obtained for the convenience of counsel. Plaintiffs also argue that the bill includes non-allowable costs for appearance fees and a condensed transcript.

"In determining whether the costs of recording a deposition may be taxed under § 1920, a district court must decide the factual question of whether the deposition was necessarily obtained for use in a case." *Watson*, 492 F. App'x at 996. "Where the deposition costs were incurred for the prevailing parties' convenience, such as to aid in thorough preparation or for the purposes of investigation only, the costs are not recoverable." *Id.* "[U]se of a deposition at trial or in a summary judgment motion tends to show that the deposition was necessarily obtained for use in a case," but "such a showing is not necessary to be taxable." *Id.*

Here, Defendants used the deposition transcripts at trial to impeach Plaintiffs' testimony. Therefore, they were necessarily obtained for use in the case, and not merely for the convenience of counsel.

As for the appearance fees, "Courts vary on whether to tax these costs." *Jones v. Novartis Pharms. Corp.*, 2018 WL 3585225, at *3 (N.D. Ala. July 26, 2018). The Northern District of Alabama has declined to tax deposition appearance fees, *id.*, while the Southern District of Alabama has taxed such fees. *Crouch v. Teledyne Cont'l*

*Motors, Inc.*, 2013 WL 203408, *10 (S.D. Ala. Jan. 17, 2013). This Court has permitted taxation of deposition appearance fees along with mileage and transcription fees. *See, e.g. Moncus v. Johanns*, 2006 WL 1180950 (M.D. Ala. May 2, 2006). Neither party has provided the Court with any definitive precedent on this issue. Therefore, as the deposition transcripts were necessarily obtained for use in the case, the Court will likewise permit the deposition appearance fees, in keeping with previous decisions of the Middle District of Alabama.

Most courts have concluded that additional costs for condensed transcripts are "for the convenience of . . . attorneys and are not taxable under § 1920." *Adams v. City of Montgomery*, 2014 WL 3053343, at *9 (M.D. Ala. July 7, 2014). Therefore, the Court sustains Plaintiffs' objection as to the $50.00 of fees charged for condensed transcripts.

5. *Financial Inability*

Plaintiffs argue that the Court should decline to award costs because they are unable to pay them and because there is a great disparity in the parties' relative wealth.

"[A] district court may, but need not, consider financial status in making a costs award to a prevailing party." *Ellis v. C. R. Bard, Inc.*, 311 F.3d 1272, 1288 (11th Cir. 2002). "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay." *Chapman v. AI Transport*, 229 F.3d 1012,

1039 (11th Cir. 2000). But the Court should not conduct a "comparison of the parties' financial strengths. To do so would not only undermine the presumption that Rule 54(d)(1) creates in prevailing parties' favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (11th Cir. 1999); *see also Chapman*, 229 F.3d at 1039.

The disparity in the parties' financial resources is irrelevant, and the Court is not permitted to consider it when taxing costs. Additionally, Plaintiffs provided insufficient documentation regarding their alleged inability to pay. For the reasons previously provided, the Court does not find Plaintiffs' trial testimony credible. Even if it were credible, it is not sufficient to overcome the presumption created by Rule 54(d)(1). The Court also notes that the amount of costs is not excessive.

6. *Nature of the Plaintiffs' Claims*

Finally, Plaintiffs argue that taxing costs would have a chilling effect on actions to enforce statutory rights under the FHA. "The language of Rule 54(d)(1) does not provide that the presumptive award of costs may be defeated because of the nature of the underlying litigation. On the contrary, it provides that '*except* when express provision therefor is made either in a statute of the United States or in these rules,' the cost-shifting to the prevailing party otherwise applies to *all* cases, including" those involving civil rights. *Cherry*, 186 F.3d at 448. Therefore, any "public interest exception" to Rule 54(d)(1) "must be contained explicitly in a statute or rule

. . . ." *Id.*

The FHA specifically provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Additionally, it permits awards of actual and punitive damages to prevailing plaintiffs. 42 U.S.C. § 3613(c)(1). Therefore, the FHA "already contains incentives to serve the public interest as identified by Congress," *Cherry*, 186 F.3d at 448, and it contains no public interest exception to the general rule that the prevailing party is entitled to an award of costs.

For these reasons, the Court **grants in part and denies in part** Defendants' Motion to Tax Costs to Plaintiffs [147]. The Court denies the motion with respect to $50.00 of fees for condensed transcripts, but the Court grants the motion in all other respects. The Court hereby awards Defendants costs in the amount of $4,600.76.[1]

SO ORDERED AND ADJUDGED this 6th day of February, 2019.

                                            /s/ Keith Starrett
                                            KEITH STARRETT
                             UNITED STATES DISTRICT JUDGE

---

[1] $4,650.76 − $50.00 = $4,600.76